```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF GEORGIA
                    ATLANTA DIVISION

UNITED STATES OF AMERICA      :
                              :      CRIMINAL ACTION
     v.                       :
                              :      NO.  1:10-CR-516
DEVON SAMUELS,                :      NO.  1:10-CR-517
     a/k/a Smokey             :
```

**MOTION FOR REVOCATION OF PRETRIAL RELEASE ORDER FOR DEFENDANT**

The United States of America, by and through its counsel, Sally Quillian Yates, United States Attorney for the Northern District of Georgia, and Jeffrey W. Davis and L. Skye Davis, Assistant United States Attorneys, files this Motion for Revocation of defendant Devon Samuel's Release Order.

### Introduction

On December 14, 2010, a federal grand jury returned a 14-count indictment charging the defendant (a Customs and Border Protection officer) and others with conspiring to launder drug money, bulk cash smuggling, attempting to bring weapons onto an aircraft, and unlawful use of a government computer. See United States v. Samuels, 1:10-CR-516. In a second indictment, defendant and others were charged with conspiring to commit marriage fraud and encouraging an alien to reside in the United States for his own financial gain. See United States v. Samuels, 1:10-CR-517. Based on those charges, defendant faces a maximum term of imprisonment of 20 years.

On December 16, 2010, the Honorable Judge Brill conducted a detention hearing. The United States moved to detain defendant

because he represents a danger to the community and a flight risk. <u>See</u> U.S.C. § 3142. Ultimately, Judge Brill heard argument and ordered defendant released on his personal recognizance with certain conditions, including electronic monitoring. The United States requested that the Court stay its order so that the Government could appeal the ruling, and the Court granted the Government's application. By this motion, the United States moves for revocation of defendant's Pre-trial Release Order.

### **Argument**

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(e). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. <u>See</u> <u>United States v. King</u>, 849 F.2d 485, 488 (11th Cir. 1988). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. <u>Id</u>; <u>United States v. Quartermaine</u>, 913 F.2d 910, 917 (11th Cir. 1990); <u>King</u>, 849 F.2d at 489; <u>United States v. Medina</u>, 775 F.2d 1398, 1402 (11th Cir. 1985).

Among the factors the Court shall consider during the detention hearing or upon review are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by defendant's release. See 18 U.S.C. § 31421(g); United States v. Hurtado, 779 F.2d 1467, 1470 n.3 (11th Cir. 1985).  And, when reviewing a detention order, a district court must conduct a de novo examination and exercise "independent consideration" of all facts properly before it. United States v. King, 849 F.2d 485, 490 (11th Cir. 1988).  Judged under these principles, defendant's Pre-trial Release Order should be revoked as the facts of the case establish that defendant is both a continued danger to the community and a flight risk.

To begin, the weight of the evidence against defendant justifies detention –- as the United States has substantial proof of guilt. See U.S.C. § 3142(g)(2).  By way of background, the investigation against defendant began based on information from a confidential source (CS-1). CS-1 stated that defendant used his law enforcement position to smuggle aliens into the United States and to facilitate the activities of several drug traffickers in the Atlanta-metropolitan area. According to CS-1, defendant was paid

between $4000 and $5000 per trip to transport drug proceeds throughout the United States and Jamaica, by using his law enforcement credentials to bypass airport security and to avoid suspicion.  Subsequently, law enforcement was able to introduce undercover officers, posing as international drug traffickers, to defendant. As a result of those introductions, in November 2010, defendant was the subject of three undercover sting operations.

First, on November 2, 2010, defendant met with an undercover officer (UC-2) and received $25,000 in cash represented to be drug money.  Defendant was to take his 10% fee "off the top."  There is an audio recording and photographs of this meeting. After the transaction, video footage, physical surveillance, and bank records show that defendant deposited $2500 into a Chase bank account.  The next day, on November 3, 2010, video footage and physical surveillance show that defendant flew from Atlanta to Jamaica and delivered $22,000 to UC-1.  While in the airport, defendant used his Security Identification Display Area (SIDA) badge to enter the secured areas of the airport and the plane itself, without being screened or following airport security requirements –- in violation of federal law.

Second, on November 12, 2010, defendant met with UC-2 to discuss a second money transportation deal.  This transaction was also recorded and photographed.  During the meeting, UC-2 stated that the money was "dope money," that the cash was "not girl scout

money ... [so] you don't wanna be ... fooling with somebody's money," and that the organization had some "pill money" ready to be transported. Later that day, defendant stated that, he had "a lot to lose, being a federal officer." On November 18, 2010, defendant met with UC-2 and received $50,000 in cash represented to be derived from drugs. During this recorded meeting, defendant acknowledged that he understood that the money came from "the Mexicans, but not like Mexican school teachers" and that the funds were "dope money." Defendant was paid $5000, plus the cost of his flight, to take the money to Jamaica. Physical surveillance and video footage show that on November 19, 2010, defendant flew from Atlanta to Jamaica and delivered $50,000 to UC-1. While in the airport, defendant used his SIDA badge to enter the secured areas of the airport and the plane itself, without being screened or following airport security requirements.

Third, on November 30, 2010, defendant met with UC-2 and UC-3 to discuss smuggling money and guns into the airport. This meeting was captured on audio and video recordings. During the meeting, defendant was shown a picture of the five guns that the undercover wanted to bring through the airport. Later that day, physical surveillance and video footage show that defendant used his SIDA badge to bypass airport security while carrying luggage that contained $25,000 and 5 firearms. Once past airport security, defendant handed the luggage to UC-3, for her to transport to

Arizona, for a meeting with members of a Mexican drug cartel. Defendant was paid $4000 to execute this transaction. Simply stated, the evidence against defendant is substantial.

In addition to those undercover operations, defendant also abused his access to confidential government information.  As a customs officer, defendant had access to data contained in the Treasury Enforcement Communications System (TECS), which includes records for individuals who are the targets/suspects of federal investigations. CS-1 stated that on several occasions defendant ran TECS searches on himself and others.  A review of defendant's prior TECS searches confirmed that he has queried TECS for data on himself and others, including Jerome Bushay and Mark Tomlinson (both of whom are separately charged with drug trafficking offenses).  See United States v. Bushay, 1:10-CR-521.

On December 15, 2010, federal officers arrested defendant pursuant to the current indictments.  Thereafter, defendant was advised of his Miranda warnings, which he waived. See Miranda v. Arizona, 384 U.S. 436 (1966)(police must advise a suspect of his rights against self-incrimination before conducting a custodial interrogation).  In his statement, defendant admitted that he took a bag into the airport for Bushay and gave that bag to a Hispanic male. In doing so, defendant used his SIDA badge to bypass security and the bag was not screened. Defendant claims he did not know what was in the bag.

Moreover, the nature of the charges and defendant's characteristics warrant pre-trial detention.  See 18 U.S.C. §§ 3142(g)(1) and (3).  As a preliminary matter, defendant faces a significant prison sentence if convicted as charged.  See 18 U.S.C. § 1956 (20 year maximum sentence).  When considered in conjunction with the strength of the Government's case, these conditions provide defendant with a strong incentive to flee.

Additionally, the charges against defendant are serious violations of the law.  Indeed, defendant has been indicted for smuggling drug money from Atlanta to Jamaica and for abusing his access to government computers. And, defendant has been charged with smuggling guns -- for a drug trafficker -- on to a commercial airplane.  These acts standing alone are significant enough to warrant detention.

Here, of course, defendant's individual characteristics further support revocation of the Magistrate's Order.[1]  After all, defendant is a federal law enforcement officer.  In that position, defendant was entrusted to safeguard this nation's borders and to provide security at the world's busiest airport.  In a complete abdication of that trust, defendant engaged in a course of illicit conduct, which demonstrates both an utter disrespect for law and a propensity to trade his word for personal gain.  Defendant's

---

[1] As a former-Jamaican citizen, defendant has strong ties to that country.  And, flight records show that defendant frequently travels internationally.

7

conduct demonstrates that he cannot be trusted and that his actions are driven by self-interest. As a result, no conditions or combination of conditions exists that would assure the safety of the community or defendant's appearance

## **Conclusion**

For these reasons, the United States respectfully requests that this revoke defendant's Pre-trial Release Order and detain defendant.

Dated:    December 17, 2010.

                              Respectfully submitted,
                              SALLY QUILLIAN YATES
                              UNITED STATES ATTORNEY

                              */s/ Jeffrey W. Davis*
                              Jeffrey W. Davis
                              Assistant United States Attorney
                              75 Spring Street, SW, Suite 600
                              Atlanta, GA 30303
                              404.581.6323; Fax: 404.581.6181
                              Georgia Bar Number 426418


                              */s/ L. Skye Davis*
                              L. Skye Davis
                              Assistant United States Attorney
                              Provisionally admitted
                              pursuant to LR 83.1, NDGa.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1C**

This is to certify that the foregoing document was formatted in accordance with Local Rule 5.1B in Courier New font, 12 point type.

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served upon the persons listed below a copy of the foregoing document via the Electronic Case Filing system of the United States District Court for the Northern District of Georgia, which will automatically send an e-mail notification of such filing to the following attorney/s of record:

    Counsel for defendant.

This 17th day of December, 2010.

*/s/ Jeffrey Davis*
JEFFREY DAVIS
Assistant United States Attorney