IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA, :
                            :
       Plaintiff,           :     CRIMINAL INDICTMENT
                            :     NO. 1:10-CR-516 & 1:10-CR-517
v.                            :
                            :
DEVON SAMUELS a/k/a SMOKEY, :
                            :
       Defendants.       :

## RESPONSE TO GOVERNMENT'S MOTION FOR
## REVOCATION OF PRETRIAL RELEASE ORDER

COMES NOW Devon Samuels, by and through undersigned counsel and files this his response to the government's Motion for Revocation of Pretrial Release Order for Defendant (DOC. 14) and in support thereof shows this Court as follows:

## INTRODUCTION

On December 16, 2010, the Hon. Chief Judge Gerrilyn Brill conducted a detention hearing in this case, a copy of the transcript of that hearing being hereto attached and marked as Exhibit "A". Judge Brill found that the Defendant was not a risk of flight or a danger to the community, a copy of the Order setting conditions of release being hereto attached and marked as Exhibit "B". On December 17,

2010 the government filed its Motion for Revocation of Pretrial Release Order for Defendant (DOC. 14).

## ARGUMENT

Pursuant to 18 U.S.C. Section 3145(a)(1) following a magistrate's order that a person who is detained be released, the attorney for the government may file, with the Court having original jurisdiction over the offense, a motion for revocation of the Order or amendment of the conditions of release.[1] From here, the District Court has two options:  first, based solely on a careful review of the pleadings and the evidence developed at the magistrate's detention hearing, the District Court may determine that the magistrate's factual findings are supported and that the Magistrate's legal conclusions are correct.  The District Court may then explicitly adopt the magistrate's pretrial detention order.  Adoption of the order obviates the need for the District Court to prepare its own written findings of fact and statement of reasons supporting pretrial detention.  United States v. King, 849 F.2d 485, 490 (11th Cir, 1988)  The District Court also has a second option:  Where the District Court determines that additional evidence is necessary or that factual issues remain unresolved, the District Court may conduct an evidentiary

---

[1] Section 3145, review and appeal of a release or detention Order.

(a) **Review of a release Order. – If a person is ordered released by a Magistrate Judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal Appellate Court-**

(1) **The attorney for the government may file, with the Court having original jurisdiction over the offense, a motion for revocation of the Order or amendment of the conditions of release**

hearing for these purposes. The District Court must then enter written factual findings and written reasons supporting its decision. If the District Court concludes that the additional evidence does not affect the validity of the Magistrate's findings and conclusions, the Court may state the reasons therefore and then explicitly adopt the Magistrate's Pretrial Detention Order. King at 491.

The government's brief in this case does not set out any additional facts nor does it request an evidentiary hearing to resolve any factual disputes upon which the magistrate judge's decision was made. The record as before the magistrate Court gives this Court ample evidence upon which it can and should conclude that the Magistrate's decision to grant pretrial release was appropriate.

As noted by the Defendant's counsel at the detention hearing and the Magistrate Judge, this case does not involve any alleged acts of violence on behalf of the Defendant nor does it allege any drug trafficking.[2] Additionally, there is little if any likelihood that the Defendant could, in fact, continue the acts which formed the basis of the indictments against him which relate to his status as a federal law enforcement officer. The Eleventh Circuit in the King case noted that where the Defendant is alleged to be the leader of a high volume and extremely profitable cocaine distribution scheme and has drug connections outside of the United States that detention is appropriate. That case does not obtain here.

---

[2] Specifically, this is not a presumption case as contemplated by the Bail Reform Act.

Finally, as noted by the Defendant's counsel at the original detention hearing, the Defendant's status as a law enforcement officer should weigh in favor of bail. The Defendant has no prior criminal record and the likelihood of harm to the Defendant in an incarcerated environment mitigates to a finding that bail with the conditions as set out by the Magistrate is appropriate. The Magistrate's determination that the electronic monitoring was sufficient to insure the Defendant's presence in court is a reasonable decision under the facts and circumstances of this case. The Defendant is a United States citizen, has family in the Atlanta area and family support throughout the country. Finally, the pretrial services officer who has interviewed the Defendant and who makes decisions on bonding recommendations on a regular basis recommended that the Defendant be released on an unsecured bond.

WHEREFORE, the Defendant prays that this Court adopt the findings of the Magistrate and deny the government's request to revoke the Defendant's bond.

Respectfully submitted this 20th day of December, 2010.

/s/ William A. Morrison
William A. Morrison
Georgia Bar No. 525186
Attorney for Defendant Devon Samuels

**Jones, Morrison & Womack, P.C.**
230 Peachtree Street NW, Suite 1250
Atlanta, GA 30303
(404) 658-1670

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing Motion to Amend Conditions of Release with the Clerk of Court using the CM/ECF system, which will automatically notify all parties of record via e-mail in this case.

This 20th day of December, 2010.

/s/ *William A. Morrison*
WILLIAM A. MORRISON
Georgia Bar No. 525186
Attorney for Defendant Devon Samuels

1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


UNITED STATES OF AMERICA,      )
                               )
                               )
     -VS-                      )  DOCKET NO. 1:10-CR-516-1-TCB
                               )  DOCKET NO. 1:10-CR-517-3-TCB
DEVON SAMUELS,                 )
                               )
     DEFENDANT.                )


TRANSCRIPT OF ELECTRONICALLY RECORDED INITIAL APPEARANCE
AND DETENTION PROCEEDINGS
BEFORE THE HONORABLE GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE
THURSDAY, DECEMBER 16, 2010

APPEARANCES:

ON BEHALF OF THE GOVERNMENT:

     JEFFREY W. DAVIS, ESQ.
     ASSISTANT UNITED STATES ATTORNEY

ON BEHALF OF THE DEFENDANT:

     NICOLE M. KAPLAN, ESQ.




TRANSCRIBED BY:
ELISE SMITH EVANS, RMR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
ATLANTA, GEORGIA



1              (Thursday, December 16, 2010; Atlanta, Georgia.)

2              THE COURT:  Be seated.

3              This is the case of United States versus Devon Samuels.

4    Are you Devon Samuels?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Mr. Samuels, you have been charged in two

7    separate indictments.  The first 1:10-CR-516, the other

8    1:10-CR-517.  Have you been provided with copies of the

9    indictments?

10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  Okay.  The first indictment charges in

12   general that between October 2010 and November 30, 2010, you

13   conspired with others, namely Mark Tomlinson and Keisha Jones, to

14   commit money laundering violations.

15             The indictment alleges that you conspired to conduct

16   financial transactions involving the proceeds from unlawful

17   activity, that is, the distribution of controlled substances.

18   And that it was part of the conspiracy to transmit monetary

19   instruments and funds from outside the United States to inside

20   the United States, that is, into Atlanta, from Jamaica with the

21   intent to promote the carrying on of a specified unlawful

22   activity.

23             Count Two charges that between October 27th, 2010, and

24   November 3rd, you and Mr. Tomlinson, with the intent to avoid a

25   transaction-reporting requirement, knowingly attempted to conduct

1  a transaction, a financial transaction, affecting interstate and

2  financial -- and foreign commerce, that is, the transfer and

3  delivery of approximately $22,000 in United States currency,

4  represented by a law enforcement officer to be the proceeds of

5  dealing in a controlled substance.

6          Count Three charges that between October 27th, 2010,

7  and November 3rd, you and Mr. Tomlinson concealed more than

8  $10,000 in currency on your person and in an article of luggage,

9  and transported and attempted to transport that money from United

10  States to Jamaica, from Atlanta to Jamaica.

11          Count Four charges that on November 3rd, you, in

12  violation of the security requirements of the United States,

13  entered an aircraft and airport area, a felony of the United

14  States -- I'm sorry, that you entered a secured area, a secured

15  aircraft area, with intent to commit a felony under the laws of

16  the United States.

17          That is the crimes charged in Counts One, Two and Three

18  of the indictment.

19          Count Five charges that on or about November 18th and

20  19th, you, with intent to avoid a transaction reporting

21  requirement, did attempt to conduct a financial transaction

22  affecting interstate and foreign commerce, that is, the delivery

23  of approximately $50,000 in United States currency that was

24  represented by a law enforcement officer to be the proceeds of

25  dealing in a controlled substance.

1           Count Six charges that on or about November 19th, 2010,

2   you and Keisha Jones, with intent to evade a currency reporting

3   requirement, knowingly concealed more than $10,000 in currency on

4   their person and in their luggage and transported and transferred

5   and attempted to transport that currency from Atlanta to Jamaica.

6           Count Seven charges that, again, you, in violation of

7   security requirements, entered an aircraft and airport area that

8   serves an air carrier, with intent to commit a felony, that is,

9   the crimes charged in Counts One, Five and Six of the indictment.

10           Count Eight charges that on or about November 30, 2010,

11   with the intent to promote the specified unlawful activity, did

12   conduct a monetary transaction, that is, approximately $20,000 in

13   United States currency, represented by a law enforcement officer

14   that was property used or conduct -- used to conduct or

15   facilitate drug dealing.  So, that's a money laundering charge,

16   also.   That you conducted a financial transaction involving

17   $20,000 that was represented to you to be the proceeds of drug

18   dealing.

19           Count Nine charges that you attempted to aid and abet

20   an individual to get on an aircraft intended for operation in

21   intrastate air transportation, when that person had on her person

22   and her property a concealed dangerous weapon that would be

23   accessible to the individual in flight.

24           Count Ten charges that you knowingly and willfully

25   entered, in violation of security requirements, of an aircraft

1  and airport area that serves an air carrier or foreign air

2  carrier, with intent to commit a felony, that is, the crimes

3  charged in Counts One, Eight and Nine of the indictment.

4          Count Eleven charges that you intentionally exceeded

5  authorized access to a computer and thereby obtained information

6  from a department and agency of the United States.

7          Count Twelve charges that on June 29th, 2006, that you

8  intentionally exceeded authorized access to a computer and

9  obtained information from a department and agency of the United

10  States.

11          Count Thirteen, same thing, access to a computer when

12  you were unauthorized to do so to obtain information on June 3rd,

13  2007.

14          Same offense alleged on July 25th, 2009, access to a

15  computer without authority.

16          Okay.  Do you understand what you're charged with?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Okay.  Looking at the indictment and seeing

19  that some of it charges entering an aircraft area -- and this

20  case is not going to be assigned to me, but does this involve --

21  does this case involve Delta Air Lines?

22          MR. DAVIS:  No, Your Honor, it does not.

23          THE COURT:  It does not?  Okay.

24          MS. KAPLAN:  Well --

25          THE COURT:  Go ahead.

1    MR. DAVIS:   The defendant may have used Delta Air

2 Lines, but he is not employed by Delta Air Lines.

3    THE COURT:   Okay.  But is Delta Air Lines a victim in

4 this case?

5    MR. DAVIS:   The defendant's wife is employed by Delta

6 Air Lines.

7    THE COURT:   The only reason I say that is that I have a

8 financial interest in Delta Air Lines, and if I don't do any -- I

9 don't do -- handle cases where Delta Air Lines is a victim.

10 So --

11    MR. DAVIS:   They're not a victim.

12    THE COURT:   -- if that doesn't -- doesn't present a

13 problem, then I'll just go ahead and proceed.

14    Okay.  So, that generally describes the first

15 indictment.  Do you understand what you're charged with in the

16 first indictment?

17    THE DEFENDANT:   Yes, Your Honor.

18    THE COURT:   The second indictment charges you and

19 others with conspiracy to violate the immigration laws by

20 participating in and arranging a fraudulent marriage between two

21 other people, the two co-defendants, Carlton Ferguson and Dahlia

22 McLaren.  The indictment alleges that the conspiracy was for them

23 to enter into a marriage for the sole purpose of enabling a

24 foreign-born national to obtain legal permanent resident status

25 in the United States, and that you participated in the

1   arrangements for this sham marriage, with Ferguson being a

2   naturalized United States citizen and McLaren being a

3   foreign-born Jamaican national.  And that you gave advice and

4   consulted with them on this, told them what actions they needed

5   to take to allow their sham marriage to appear legitimate, and

6   received money for assisting them with the sham marriage and with

7   the completion of required immigration forms.

8           And, then, there's a marriage fraud count in Count Two

9   related to that.  That actually is just the other two defendants.

10  You're not charged in the other counts.

11          MR. DAVIS:  Just Count Four, Your Honor.

12          THE COURT:  Count Four charges that in or about

13  December 2009 and continuing through the date of this indictment,

14  you did encourage an alien, namely Dahlia McLaren, to reside in

15  the United States, knowing and in reckless disregard of the fact

16  that her residence in the United States was in violation of law

17  and done for the purpose of financial gain.

18          So, do you understand what you're charged with there?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.  Now is the time when you enter

21  your formal plea to the charges, which I expect will be not

22  guilty at this stage.  You're entitled to have the indictment

23  read to you verbatim.  Do you need any further reading or

24  explanation of the charges before I have your plea entered?

25          THE DEFENDANT:  No, Your Honor.

1         THE COURT: Okay. Would you verify his signature?

2         MR. DAVIS: Mr. Samuels, I'm showing you a document

3    entitled Plea with Counsel form for docket ending 516. Have you

4    seen this form before?

5         THE DEFENDANT: Yes.

6         MR. DAVIS: Is that your signature above the line that

7    says signature, defendant?

8         THE DEFENDANT: Sure. Yes, sir.

9         MR. DAVIS: I'm also showing you a document entitled

10   Plea with Counsel form. This pertains to docket 517. Is that

11   your signature above the line that says signature, defendant?

12        THE DEFENDANT: It is.

13        MR. DAVIS: And is it your intention on 516 to plead

14   not guilty to Counts One through Fourteen?

15        THE DEFENDANT: Yes, sir.

16        MR. DAVIS: Okay. And with regard to 517, is it your

17   intention to plead not guilty to Counts One and Four?

18        THE DEFENDANT: Also yes.

19        MR. DAVIS: And, Ms. Kaplan, is this your signature on

20   the Plea with Counsel form for docket 516 and 517 above the line

21   that says signature, attorney for defendant:

22        MS. KAPLAN: Yes, it is.

23        MR. DAVIS: Your Honor, I tender the Plea With Counsel

24   forms for 516 and 517.

25        THE COURT: All right. The not guilty pleas will be

1   entered.   And I understand that you estimated that the money

2   laundering case would be a medium case, and that the marriage

3   fraud case would be a short case?

4           MR. DAVIS:   That's right, Your Honor.

5           THE COURT:   But they're related cases, obviously?

6           MR. DAVIS:   Yes, Your Honor.

7           THE COURT:   All right.   This case will be assigned for

8   pretrial matters to Magistrate Judge Baverman and to District

9   Court Judge Batten for any final rulings, plea, trial or

10  sentencing that may become necessary.   The Magistrate Judge will

11  have a pretrial conference and make preliminary rulings, and all

12  final rulings and any trial will be handled by the District Court

13  Judge Batten.

14          All right.   Mr. Samuels, the Government has filed a

15  Motion for Detention.   That means that they're asking that you be

16  kept in jail and that you not be released while this case is

17  pending.   You're entitled to a hearing called a detention hearing

18  where I would hear the Government's presentation -- actually, we

19  didn't go over the appointment of counsel, did we?

20          MS. KAPLAN:   No.   I'm sorry.

21          THE COURT:   Let me start over, then.   Because you have

22  the right to remain silent, anything you say can be used against

23  you in court.

24          You also have the right to have an attorney represent

25  you during any questioning by law enforcement authorities.   And

1  if you cannot afford an attorney, I would appoint an attorney for

2  you at no cost to you.

3           All right.  You're seated next to Ms. Kaplan, who's an

4  attorney with the Federal Defender Program.  Do you want me to

5  appoint an attorney for you?

6           THE DEFENDANT:  Ms. Kaplan will do for now.

7           THE COURT:  I'm sorry?

8           THE DEFENDANT:  Ms. Kaplan will do for the time being.

9           THE COURT:  Okay.

10          MS. KAPLAN:  Your Honor, Mr. Davis informs me that my

11  office has a conflict on all of these cases, so I think -- I

12  think that if he qualifies, it would be in his best interest to

13  appoint a lawyer, Your Honor.  He does want the opportunity to

14  try and hire one, but --

15          THE COURT:  What's the nature of the conflict, if you

16  can tell me?  I just hate for the Federal Defender to be excluded

17  in a major case and to be excluded from representing the -- you

18  know, an important defendant if this is -- if there's not a

19  clear-cut conflict of interest.

20          MR. DAVIS:  There is, Your Honor.  I can discuss it ex

21  parte if you like.

22          THE COURT:  Okay.  But you don't have any doubt that

23  there's a conflict of interest?

24          MR. DAVIS:  (Inaudible), Your Honor.

25          THE COURT:  All right.  But I will -- would like you to

1   let me know ex parte, but I'll accept your representation for
2   now.
3           All right.  If it's a representation of a witness, then
4   hopefully -- hopefully in the future we can avoid conflicts of
5   interest like that and exclude the Federal Defender, but we can
6   discuss that at a later point.
7           Okay.  So, then the question is, Mr. Samuels, do you
8   want me to appoint someone to represent you?  Let me look at your
9   financial situation.  You're employed with U. S. Customs and
10  Border Patrol, but I expect that's going to end now.  And you
11  have some stocks.
12          What about money; do you have any money available to
13  you, any cash or money in bank accounts?
14          THE DEFENDANT:  Yes --
15          THE COURT:  Oh, I see.  You have money in bank
16  accounts.
17          Well, I would expect that given the nature of the case,
18  that the assets that you have are not going to be sufficient to
19  pay for an attorney and your living expenses.  This will be an
20  expensive case to defend, so -- but I'll do whatever you want.
21  If you want me to appoint an attorney to represent you, I can do
22  that, but what I would do is since you do have some assets, I
23  would require that you pay a portion of those assets into the
24  court to reimburse the Government for the cost, at least the
25  partial cost, of your court-appointed attorney.  And then, if at

1   an early stage, you find out that you can hire and attorney of

2   your own choosing, you can do that and that attorney can step in

3   and represent you, even if I appoint an attorney initially.

4   However, you can't wait too long to do that.  You can't wait, you

5   know, until the case has been pending for several months before

6   getting your own attorney because it might be too late.

7            So, what do you want me to do?  Do you want me to

8   appoint an attorney now to represent you and then you can look

9   into getting an attorney for your own choosing?

10           THE DEFENDANT:  That's what I want is the -- because, I

11  mean, I own a home and, you know, I could also use that as

12  collateral to hire the attorney.  You know what I'm saying?  So,

13  I mean, whatever it takes to hire a true attorney to defend me in

14  this matter.

15           THE COURT:  Well, you'll have a true attorney, no

16  matter what.

17           THE DEFENDANT:  Well, what I --

18           THE COURT:  The attorneys that we appoint are --

19           THE DEFENDANT:  Right.

20           THE COURT:  -- are very well qualified.

21           THE DEFENDANT:  Right.  But you understand what I'm

22  saying?  I mean, somebody from outside the public defenders.

23           THE COURT:  Right.  Well, you are going to get somebody

24  outside the public defender.  Not that there's anything wrong

25  with the attorneys in the public defender.

1        THE DEFENDANT:  No.

2        THE COURT:  A lot of people have the misconception that

3   somehow the public defenders associate or align with the

4   Government, but they're really not.  I mean, they aggressively

5   represent only in the interest of the people that they're

6   appointed to represent and have no loyalty to the Government, to

7   the prosecution.

8        But having said that, the attorney that I appoint to

9   represent you will be a private attorney who has been determined

10  to be qualified by the Court and who represents other clients for

11  fees.  So, if you want, I'll go ahead and appoint one of those

12  attorneys, but require that you reimburse the Government, I'll

13  say -- okay.  I'll say, initially making a payment of $5,000 for

14  that attorney's expenses.  And that could be revised as the case

15  goes on.

16        MS. KAPLAN:  Your Honor, I think it might make things

17  easier if that first payment could be due in maybe 15 to 30 days.

18  By then he might have been able to hire an attorney.

19        THE COURT:  Okay.  That's fine.  We'll say that that

20  first payment would be due in 30 days, the first payment of

21  $5,000.  And, then, I'll ask Judge Baverman just to reevaluate

22  that as the case goes on.

23        So, we've dealt with the attorney situation for now,

24  and what I had started to tell you is the Government is asking

25  that you be detained, that is, that you be kept in jail and that

 1   you not be released from jail while this case is pending.  You're
 2   entitled to a hearing called a detention hearing where I would
 3   hear the Government's presentation and anything that you or your
 4   attorney wishes to say or present and decide if you should be
 5   released and, if so, under what conditions.  That hearing is held
 6   pretty quickly.
 7          Is the Government or the defendant asking for a
 8   continuance of that hearing?
 9          MR. DAVIS:  No, ma'am.
10          MS. KAPLAN:  No, Your Honor.
11          THE COURT:  You want to go forward with it today?
12          MS. KAPLAN:  Yes, Your Honor.
13          THE COURT:  Is there a conflict of interest in having
14   the Federal Defender represent Mr. Samuels for purposes of this
15   detention hearing?
16          MR. DAVIS:  I don't believe so.  I don't really believe
17   there would be a conflict, Your Honor.
18          THE COURT:  Okay.  Do you want to do it now?
19          MR. DAVIS:  Yes, Your Honor.
20          THE COURT:  Okay.  Go ahead.
21          MR. DAVIS:  Your Honor, Devon Samuels is a current,
22   albeit soon to be former employee of the Customs and Border
23   Protection agency.  He has used and abused his position of
24   authority and trust to engage in repeated unlawful acts and it's
25   always for profit.  In the month of November alone, Samuels is

1   the subject of three undercover sting operations.  First, on
2   November 3rd, 2010, Samuels accepted approximately $22,000 from
3   an undercover police officer who was posing as a drug money
4   launderer.  Samuels took that money to the airport.  He used his
5   airport credentials and badge to bypass security and avoid TSA
6   screening.  And ultimately, Samuels smuggled that money to --
7   sorry, from Atlanta to Jamaica.  Once in Jamaica, Samuels gave
8   that purported drug money to a Jamaican undercover police officer
9   who was posing as an international drug trafficker.

10          Secondly, on November 19th, 2010, Samuels accepted
11  50 -- $50,000 in alleged drug proceeds, again given to him by an
12  undercover officer.  Samuels also smuggled that money from
13  Atlanta to Jamaica.  And in Jamaica, once again, he delivered the
14  money to a Jamaican undercover officer who was posing as a
15  international drug trafficker.

16          Third, on November 30th, in his most brazen conduct,
17  Samuels accepted five firearms and approximately $20,000 in
18  alleged drug proceeds from a undercover officer.  Samuels again
19  unlawfully used his badge to bypass security and avoid TSA
20  screening in the airport.  He brought the guns and the money into
21  the airport.  Once in the airport, Samuels gave those firearms
22  and money, which was in a bag of luggage, to an undercover -- a
23  second undercover officer who was allegedly going to transport
24  those items for a meeting with the Mexican drug cartel.

25          Samuels has also repeatedly used his access to federal

1   computers, the tech system, to query himself and his

2   drug-trafficking associates. Records show that he has queried

3   himself, which is against regulations, queried his old addresses,

4   and has queried Jerome Bushay, who is the lead defendant in the

5   drug-trafficking indictment 521.

6           Lastly, Your Honor, Samuels has conspired to commit

7   marriage fraud. In that regard, and again for a fee of at least

8   $500, he helped Carlton Ferguson and Dahlia McLaren to deceive

9   immigration authorities into believing that they were

10  legitimately married by telling them how to fill out the forms,

11  how to conduct their interview, what to say, and then advised

12  them how to make sure that the marriage appeared legitimate even

13  if they were going to be living separately.

14          Obviously the defendant has strong ties to Jamaica.

15  That's where he's born. He travels consistently internationally

16  as evidenced in the Pretrial Services report. Last night when

17  confronted, Samuels lied to federal agents. He said that

18  although in November he may have transported money through the

19  airport from the undercover, it was never more than $9,000

20  because he knows that there's a $10,000 reporting requirement,

21  and he was not paid to transport the money. Unfortunately for

22  the defendant, after the defendant received the first payment of

23  $25,000, Chase video surveillance footage shows him depositing

24  $2,500 into his bank account, which is exactly his 10 percent

25  fee.

1            In short, Your Honor, the defendant's conduct is simply

2    morally repugnant.  He's betrayed his trust as an officer.  He

3    faces serious criminal penalties.  He has strong ties to Jamaica.

4    He's a flight risk.  And for all those reasons, the United States

5    would ask that he be remanded.

6            THE COURT:  Ms. Kaplan?

7            MS. KAPLAN:  Your Honor, I would note for the Court

8    that even assuming that Mr. Samuels did all the things that the

9    Government has accused him of doing, he wouldn't be able to do

10   them anymore, because as the Court has mentioned, he will no

11   longer be working -- it's extremely unlikely that he'd be working

12   as a Customs and Border Patrol agent or employee.

13           Mr. Samuels is a United States citizen.  He's been a

14   citizen since approximately 19 -- well, he's been here since

15   1988.  The only family member he has residing in Jamaica is his·

16   father.  His mother, his brothers and his sisters are all in the

17   United States.  He owns his own home here.

18           The Government did not mention whether when they

19   searched Mr. Samuels' home yesterday, whether or not they seized

20   his passport, but he has worked in a law enforcement capacity at

21   the airport with Immigration.  If he is held in custody, he would

22   be subject to an increased likelihood of abuse because of his

23   former role.  A decent portion of the illegal immigrants that are

24   being housed on criminal charges were found at the airport.  And,

25   so, I would submit to the Court for his own safety that a bond

 1  would be appropriate.

 2          He's not charged with anything violent.  He's not

 3  charged with dealing drugs himself, and I think the Court could

 4  release him on bond under conditions that would assure his

 5  appearance.  The Pretrial Services report does recommend that he

 6  be released on an unsecured bond.  He has no criminal history.

 7          So, in short, I think that given -- I don't know if his

 8  passport's been seized or not.  It has been?  So, he doesn't have

 9  the ability to travel.  And certainly, unlike any normal

10  defendant, I think most of the -- he would have to get past the

11  very people who know him best to try and leave the country

12  through the Atlanta airport.  So, I don't think he's a flight

13  risk.  I don't think he's a physical danger to the community.

14  And, so, I do think the Court could release him under whatever

15  conditions the Court sees fits to assure his appearance and

16  safety of the community.

17          MR. DAVIS:  Your Honor, I would just make one follow-up

18  comment.  When the Pretrial Services report was prepared, my

19  understanding was the preparer was not aware of the nature of the

20  charges against him.

21          MS. KAPLAN:  They were aware of the general nature of

22  the charges, Your Honor, and it doesn't change the fact that he's

23  not charged with anything violent or drug trafficking.

24          THE COURT:  Okay.  Well, I think that there are

25  conditions of bond that would ensure his appearance.  So, I'm

1  influenced by the fact that he doesn't have a criminal history,

2  and while these charges are extremely serious, it doesn't involve

3  a violent act.  And as I said, I think that there are conditions

4  that would ensure that he would appear as required.

5       So, then the question is what should the conditions be?

6  I think that there should be -- of course, he'll be under the

7  supervision of Pretrial Services, but I think that there should

8  be enhanced supervision or a higher level of supervision, just to

9  make sure that there's no indication that he's making any plans

10 to leave the country.  And I'm thinking about electronic

11 monitoring at his expense.  I think I'll do that also, electronic

12 monitoring.  But he can be released even before that's set up.

13      So, he's not going to have a job, but I think he

14 could -- he could look for a job and possibly be employed during

15 the day rather than doing a complete home detention.  So, I'll

16 say that there would be a curfew.  He would be restricted to his

17 home.  That there would be electronic monitoring, but during the

18 nighttime hours, he would -- he would not be allowed to leave his

19 home, so say from, I don't know, 9 p.m. to 6 a.m. or if the

20 Pretrial Services officer thinks something else is reasonable,

21 I'd be willing to consider that.  But that would be his home

22 confinement, from 9 p.m. to 6 a.m.

23      And, of course, no application for a new passport, not

24 possess any firearms or dangerous weapons, and no travel outside

25 the Northern District of Georgia.  No contact with anyone

1   involved in the case other than through his attorney.  No contact

2   either directly or indirectly.

3          MS. KAPLAN:  The only issue with that, Your Honor, is

4   that Ms. Jones is Mr. Samuels' wife.

5          THE COURT:  Okay.  Ms. Jones is his wife.  Well -- and

6   they live together?

7          MS. KAPLAN:  Yes, Your Honor.

8          THE COURT:  Okay.  Well, he can have contact obviously

9   with his wife.  I'll leave it up to his attorney to advise them

10  whether he and his wife should discuss -- should have any

11  discussions about the offense.

12         So, any other conditions that the Government

13  recommends?

14         MR. DAVIS:  No, Your Honor.

15         THE COURT:  Okay.

16         MR. DAVIS:  Your Honor, the Government would ask that

17  you stay the order for 3 days pending appeal.

18         THE COURT:  All right.  I'll stay the order, which

19  means he won't be released for 3 days to give the Government an

20  opportunity to appeal.

21         All right.  Anything further?

22         MR. DAVIS:  No, Your Honor.

23         MS. KAPLAN:  No, Your Honor.

24         THE COURT:  All right.  All right.  We'll be in recess.

25         (End of proceedings.)

***** 

1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

CERTIFICATE OF TRANSCRIBER

        I do hereby certify that the foregoing pages are a true
and correct transcript to the best of my ability of the
electronically recorded proceedings transcribed by me in the case
aforesaid.

        This the 20th day of December, 2010.

                              _____
                              ELISE SMITH EVANS, RMR, CRR
                              OFFICIAL COURT REPORTER

AO 199A    (Rev. 6/97) Order Setting Conditions of Release

# UNITED STATES DISTRICT COURT

NORTHERN _____ **District of** _____ GEORGIA _____

United States of America

V.

DEVON SAMUELS

Defendant

## ORDER SETTING CONDITIONS
## OF RELEASE

Case Number:   1:10-CR-516

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1) The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2) The defendant shall immediately advise the court, defense counsel and the U.S. attorney in writing before any change in address and telephone number.

(3) The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed. The defendant shall appear at (if blank, to be notified) _____

Place

_____ on _____

Date and Time

## Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

( ✔ ) (4) The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

(    ) (5) The defendant executes an unsecured bond binding the defendant to pay the United States the sum of _____ dollars ($ _____ )
in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.



## ADDITIONAL CONDITIONS OF RELEASE

Upon finding that release by one of the above methods will not by itself reasonably assure the defendant's appearance  and the safety of other persons or the community,
IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

(   )   The defendant is placed in the custody of:

Person or organization _____

Address (only if above is an organization) _____

City and state _____ Tel. No. (only if above is an organization) _____

who agrees (a) to supervise the defendant in accordance with all of the conditions of release, (b) to use every effort to assure the defendant's appearance  at all scheduled court
proceedings, and (c) to notify the court immediately if the defendant violates any condition of release or disappears.

Signed: _____    _____
                                          Custodian or Proxy                         Date

( X )   The defendant must:

(X)(a)   report to   ( X ) U.S. Pretrial Svcs.;   (   ) U.S. Probation Office; Suite 900, U.S. Courthouse; 404-215-1900/1950
        ( X ) before leaving the Courthouse;   (   ) within _____ hours of release from custody, or   *enhanced supervision*
        (   ) no later than: _____ . Defendant shall follow all instructions of the supervising officer.

(✓)(b)   execute an Appearance Bond as ordered.

(X)(c)   maintain or actively seek lawful, verifiable employment.

(   )(d)   maintain or commence an education program.

(X)(e)   surrender any passport to: ( X ) Pretrial Services   (   ) Probation

(X)(f)   not obtain or possess a passport or other travel documents in your name, another name or on behalf of third persons, including minor children.

(X)(g)   abide by the following restrictions on personal association, place of abode, or travel:   Do not change your address, telephone number or place of
        employment without prior permission of your pretrial services/probation supervisor.

(✓)(h)   avoid all contact, directly or indirectly, with any person who is or may become a victim or potential witness in the investigation or
        prosecution, including but not limited to:   co-dfts  or  witnesses  (except  wife)

(   )(i)   undergo medical or psychiatric treatment: _____

(   )(j)   return to custody each (week) day at _____ o'clock after being released each (week) day at _____ o'clock for employment,
        schooling, or the following purpose(s): _____

(   )(k)   maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary, and
        abide by the rules and regulations of said facility.

(X)(l)   refrain from possessing a firearm, destructive device, or other dangerous weapons or ammunition.

(X)(m)   refrain from  (   ) any  (✔) excessive use of alcohol.

(X)(n)   refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical
        practitioner.

(   )(o)   submit to any testing required by the pretrial services office or the supervising officer to determine whether the defendant is using a prohibited substance. Any
        testing may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of
        prohibited substance screening or testing. The defendant must refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency
        and accuracy of any prohibited substance testing or monitoring which is (are) required as a condition of release.

(   )(p)   participate in a program of inpatient or outpatient substance abuse therapy and counseling if the pretrial services office or supervising officer considers it
        advisable.

(✓)(q)   participate in one of the following location monitoring program components and abide by its requirements as the pretrial services officer or supervising
        officer instructs.
        (✓)   (i) Curfew. You are restricted to your residence every day  (✓) from  _9 pm_ to _6 am_ , or  (✓) as directed by the pretrial
            services office or supervising officer; or
        (   ) (ii) Home Detention. You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse,
            or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities pre-approved by the pretrial services
            office or supervising officer; or
        (   ) (iii) Home Incarceration. You are restricted to 24-hour-a-day lock-down except for medical necessities and court appearances or other activities
            specifically approved by the court.

(✓)(r)   submit to the location monitoring indicated below and abide by all of the program requirements and instructions provided by the pretrial services officer
        or supervising officer related to the proper operation of the technology.
        (✓)  The defendant must pay all or part of the cost of the program based upon your ability to pay as the pretrial services office or supervising officer
            determines.
        (✓)  (i) Location monitoring technology as directed by the pretrial services office or supervising officer;
        (   ) (ii) Radio Frequency (RF) monitoring;
        (   ) (iii) Passive Global Positioning Satellite (GPS) monitoring;
        (   ) (iv) Active Global Positioning Satellite (GPS) monitoring (including "hybrid" (Active/Passive) GPS);
        (   ) (v) Voice Recognition monitoring.

(X)(s)   report as soon as possible to the pretrial services office or any supervision officer any contact with law enforcement personnel, including but not
        limited to any arrest, questioning or traffic stop.

(X)(t)   not travel outside the Northern District of Georgia without prior permission from your supervising Pretrial/Probation officer.

(   )(u) _____

(   )(v) _____

(   )(w) _____

## Advice of Penalties and Sanctions

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

    Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

    While on release, if you commit a federal felony offense, the punishment is an additional prison term of not more than ten years; if you commit a federal misdemeanor offense, the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) any other sentence you receive.

    It is a crime punishable by up to ten years of imprisonment and a $250,000 fine or both to: obstruct a criminal investigation; tamper with a witness, victim or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

    If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

    (1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

    (2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

    (3) any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;

    (4) a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

    A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgment of Defendant

    I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.


_____

Signature of Defendant

_____

Address

_____

City and State             Telephone

## Directions to United States Marshal

(  ) The defendant is ORDERED released after processing.

(  ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: _____    _____

Signature of Judicial Officer

GERRILYN G. BRILL,    U. S. MAGISTRATE JUDGE
Name and Title of Judicial Officer


DISTRIBUTION:  COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL